# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01235-NYW

LORENZO ROBLES,

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

    This civil action arises under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-83(c) for review of the Commissioner of the Social Security Administration's ("Commissioner" or "Defendant") final decision denying Plaintiff Lorenzo Robles's ("Plaintiff" or "Mr. Robles") application for Supplemental Security Income ("SSI"). Pursuant to the Parties' consent [#19], this civil action was referred to this Magistrate Judge for a decision on the merits. *See* [#27]; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. Upon review of the Parties' briefing, the entire case file, the Administrative Record, and the applicable case law, this court respectfully **REVERSES** the Commissioner's decision and **REMANDS** for further proceedings.

## BACKGROUND

    Mr. Robles, born January 6, 1957, alleges he became disabled on February 2, 2016, at 59 years-of-age, due to Hepatitis C, chronic vomiting, chronic respiratory failure, severe depression,

and chronic right foot pain. *See* [#18-3 at 54-55,[1] 57; #18-6 at 165, 173]. On August 31, 2016, Plaintiff protectively filed his application for SSI. [#18-2 at 17, 34; #18-3 at 53]. The Social Security Administration denied Plaintiff's application administratively on January 27, 2017. *See* [#18-2 at 17; #18-3 at 53]. Mr. Robles requested a hearing before an Administrative Law Judge ("ALJ"), *see* [#18-4 at 102-119], which ALJ Jennifer A. Simmons ("the ALJ") held on September 5, 2017, *see* [#18-2 at 17, 31]. The ALJ received testimony from the Plaintiff at the hearing, who appeared *pro se*. *See* [*id.* at 33].

Plaintiff testified that he last worked approximately three years prior to the hearing, and only on a part-time basis; that he cares for his mother; and that he receives food stamps and other state assistance. *See* [#18-2 at 36-37, 46-47]. Plaintiff also testified that he goes daily to Behavioral Health Group for methadone (which also helps his foot pain) and counseling, and that he has not drank alcohol or used heroin since 2016, though he uses marijuana still. *See* [*id.* at 39, 41-44, 48]. Plaintiff explained that in addition to several medications he uses an inhaler daily because he loses his breath. *See* [*id.* at 45]. As to his mental impairments, Plaintiff testified that he "get[s] time mixed up because [he's] had so many head injuries," that he imagines "things that aren't there or . . . people that aren't there," which causes him to feel confused, and that he has struggled with suicidal ideation. *See* [*id.* at 35, 38, 40, 46, 49]. Plaintiff stated that he "would love more than anything to go back to work" because he "made so much money" and had "such a good life." [*Id.* at 45]; *see also* [*id.* at 47-48]. His previous employment included self-employed construction work as a plasterer. *See* [*id.* at 46].

---

[1] When citing to the Administrative Record, the court utilizes the docket number assigned by the CM/ECF system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents the court cites to the document and page number generated by the CM/ECF system.

Following the hearing, the ALJ sent Vocational Expert Matthew Sprong (the "VE") a Vocational Interrogatory. *See* [#18-6 at 242-45]. In response, the VE identified Mr. Robles's past relevant work to include construction worker I, specific vocational preparation ("SVP")[2] 4, heavy exertion job in the national economy and as performed by Plaintiff; and a plasterer, SVP 7, medium exertion job in the national economy but heavy exertion as performed by Plaintiff. *See* [*id.* at 247]. The VE then considered the work an individual could perform who was born on January 6, 1957, with the same education and work experience as Mr. Robles and is able to communicate in English, and who is limited to medium exertion work subject to mild or no restrictions on his ability to lift, carry, push, pull, sit, stand, climb stairs and ladders, kneel, stoop, crouch, crawl, understand, remember, carryout tasks, interact with coworkers and the public, or be around dust, fumes, gases, and environmental irritants. *See* [*id.* at 248]. The VE indicated that such an individual could not perform Mr. Robles's past relevant work because there is more than occasional exposure to dust, fumes, etc. and the plasterer takes 2-4 years to learn. *See* [*id.*]. The VE, however, identified jobs as a laundry laborer, floor attendant, and meat clerk—each SVP 2 and medium exertion jobs—that existed in the national economy that such an individual could perform. *See* [*id.* at 249]. The VE further stated that there was no conflict between his answers and the Dictionary of Occupational Titles ("DOT"). *See* [*id.* at 249, 250].

On November 24, 2017, the ALJ issued a decision finding Mr. Robles not disabled under the Act, because Mr. Robles could perform other jobs that existed in the national economy,

---

[2] SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Vigil v. Colvin*, 805 F.3d 1199, 1201 n.2 (10th Cir. 2015) (citing Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991)); 1991 WL 688702 (G.P.O.). The higher the SVP level, the longer time is needed to acquire the skills necessary to perform the job. Jeffrey S. Wolfe and Lisa B. Proszek, SOCIAL SECURITY DISABILITY AND THE LEGAL PROFESSION 163 (Fig. 10-8) (2003).

consistent with his physical and mental limitations. [#18-2 at 17-25]. Plaintiff requested Appeals Council review of the ALJ's decision, which the Appeals Council denied, rendering the ALJ's decision the final decision of the Commissioner. *See* [*id.* at 2-4]. Plaintiff sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on August 17, 2018, invoking this court's jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 1383(c)(3).

On appeal, Mr. Robles raises a host of objections to the ALJ's RFC assessment and step five analysis. As to the RFC assessment, Plaintiff argues that the ALJ (1) ignores evidence favorable to a finding of more severe mental and physical restrictions and instead focuses only on evidence favorable to the RFC assessment, (2) fails to support with substantial evidence the finding that Plaintiff can perform medium exertion work, and (3) fails to support with substantial evidence the finding that Plaintiff can frequently interact with others. *See* [#22; #26]. As to step five, Mr. Robles argues that the ALJ proffered a flawed hypothetical to the VE because it did not account for all of Plaintiff's limitations and the evidence demonstrates that Plaintiff <u>cannot</u> perform the jobs identified. *See* [#22; #26]. Because I agree that the ALJ erred in assessing Plaintiff's RFC, I focus solely on Mr. Robles's first basis for appeal. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## LEGAL STANDARDS

SSI is available to an individual who is financially eligible, files an application for SSI, and is disabled as defined in the Act. 42 U.S.C. § 1382. An individual is determined to be under a disability only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

4

experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 13382c(a)(3)(B). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002); *see also* 42 U.S.C. §§ 1382c(a)(3)(A); 20 C.F.R. § 416.905. And when a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. 42 U.S.C. § 1382c(a)(3)(G). The earliest a claimant can receive SSI is the month following the month within which the claimant filed her application, and thus the claimant must establish that she was disabled on or prior to her application date. *See* 20 C.F.R. §§ 416.200, 416.335; *see also id.* § 416.912(b)(1) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application").

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). *See also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis[,]" while the Commissioner bears the burden of proof at step five. *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Step one determines whether the claimant is engaged in substantial gainful activity; if so, disability benefits are denied. *Id.* Step two considers "whether the claimant has a medically severe impairment or combination of impairments," as governed by the Secretary's severity regulations. *Id.*; *see also* 20 C.F.R. § 404.1520(e). If the claimant is unable to show that his impairments would

5

have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. If, however, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three. *Williams*, 844 F.2d at 750. Step three "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity," pursuant to 20 C.F.R. § 404.1520(d). *Id.* At step four of the evaluation process, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which defines the maximum amount of work the claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751; *see also id.* at 751–52 (explaining the decisionmaker must consider both the claimant's exertional and nonexertional limitations). The ALJ compares the RFC to the claimant's past relevant work to determine whether the claimant can resume such work. *See Barnes v. Colvin*, 614 F. App'x 940, 943 (10th Cir. 2015) (citation omitted). At step five the Commissioner must show that a claimant can perform work that exists in the national economy, taking into account the claimant's RFC, age, education, and work experience. *Neilson*, 992 F.2d at 1120.

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *accord Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) ("[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." (internal citation omitted)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted); *cf. Musgrave v. Sullivan,* 966 F.2d

1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). The court may not reverse an ALJ simply because she may have reached a different result based on the record, *see Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990), nor may the court "reweigh the evidence or retry the case" but rather must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Flaherty,* 515 F.3d at 1070 (internal citation omitted).

## ANALYSIS

I. **The RFC Assessment**

In formulating a RFC assessment, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including the severe and non-severe. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016). A claimant's RFC is the most work the claimant can perform, not the least. 20 C.F.R. § 404.1545; SSR 83-10. "'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.")). But the ALJ need not identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," and the court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence. *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004); SSR 96-08p. If

7

substantial evidence supports the RFC assessment, the court will not reverse the ALJ's decision even if it could have reached a different conclusion. *Ellison*, 929 F.2d at 536.

The ALJ determined that Mr. Robles retained the RFC to:

> perform medium work . . . except he can lift, carry, push, and pull fifty pounds occasionally and twenty-five pounds frequently. He can stand about six hours out of an eight-hour workday and walk about six hours out of an eight-hour workday. He can sit on an unlimited basis. He can frequently climb ramps and stairs. He can frequently knee, crouch, and crawl. He does not have limitations in stooping. He is limited to occasional exposure to dust, fumes, gases, and environmental irritants. He is able to understand, remember, and carryout tasks learned in two years or less. He is limited to frequent interaction with coworkers, supervisors, and the public.

[#18-2 at 20-21]. According to Mr. Robles, the ALJ ignored evidence of Plaintiff's chronic respiratory disease, severe and sustained depression, issues with remembering, understanding, and communicating, low GAF score, joint pain, and gastrointestinal impairments. *See* [#22; #26]. For the following reasons, the court concludes that the ALJ failed to adequately consider Plaintiff's severe depression, necessitating reversal and remand, and I therefore limit the following discussion of the medical evidence to Mr. Robles's severe depression.

**A.     Medical Evidence**

2015

Beginning in 2015, Plaintiff sought substance abuse treatment from Denver Health Medical Center ("DHMC"). *See generally* [#18-7]. Several treatment notes indicate that Mr. Robles was doing well while on methadone, that he denied suicidal ideation despite suicidal ideation in the past, that his depression and anxiety were improving, and that he displayed normal behavior. *See, e.g.*, [*id.* at 284, 286, 294, 299, 326, 338-39, 352].

Plaintiff also presented to DHMC's emergency department throughout 2015. On May 15, 2015, Mr. Robles presented to DHMC with a fever, abdominal pain, and vomiting; treatment notes indicate several diagnoses, including gastroparesis, pancreatitis, acute hypoxic, and respiratory

8

failure, and that Mr. Robles complained of chronic pain and nausea (which was worse lately) and depression and anxiety with no suicidal ideation. *See* [*id.* at 268, 270-77; #18-8 at 365-66, 389]. Treatment notes dated November 30, 2015 reveal that Plaintiff was hospitalized the week prior for suicidal and homicidal ideation, though he denied both at this appointment. *See* [*id.* at 327].

2016

In 2016, Plaintiff began treating with Behavioral Health Group ("BHG") for his substance abuse issues. A February 11, 2016 physical exam stated that Mr. Robles was alert with clear speech and did not present a threat of danger to himself or others. *See* [#18-8 at 401-04]. Mr. Robles's Health Questionnaire indicated that he complained of chronic right foot pain, chronic vomiting, head injuries, shortness of breath, anxiety, and depression. *See* [*id.* at 407-413, 428]. Treatment notes from BHG reference Mr. Robles's struggles with anxiety and depression, *see, e.g.*, [*id.* at 416-18, 427, 438-39], and mention slowed thought process due to cognitive impairment, *see* [*id.* at 438].

Medical records indicate that Plaintiff received peer counseling from Jefferson Center for Mental Health between April and August 2016. Treatment notes dated April 15, 2016 reveal that Plaintiff had a Global Assessment of Functioning ("GAF") score of 42,[3] that he presented oriented but disheveled and depressed/anxious, that he had good remote memory and fair judgment but poor recent memory, and that he displayed symptoms of decreased concentration, hopelessness,

---

[3] The GAF is a scale that assigns a score to reflect an individual's psychological, social, and occupational functioning. The scale is from 0 to 100, with a higher score indicating a higher level of functioning. A GAF score between 45-50 indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job."). Am. Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders (DSM- IV-TR) at 34 (4th ed. Text Revision 2000). The current Diagnostic and Statistical Manual of Mental Disorders (DSM-V) does not use GAF. Am. Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders (DSM-V) at 16 (5th ed. 2013).

worthlessness, anxiety/irritability, and suicidal ideation. *See* [#18-12 at 660-61, 669, 676, 680-83]. Mr. Robles's June 9, 2016 peer counseling treatment notes indicate that Plaintiff's mental status was within normal limits; however, Plaintiff did "not appear completely coherent and his attempts to describe several life events were ineffective." [*Id.* at 664].

Plaintiff also treated with Mark Rojec, M.D.—Plaintiff's primary physician. Relevant here, Dr. Rojec's treatment notes reveal that Plaintiff complained of suicidal ideation because of his various ailments, and note that Plaintiff was hospitalized in late 2014 and 2015 for suicidal and homicidal ideation, though he denied both on occasion. *See* [#18-9 at 475-88, 494-95, 498, 500, 504]. On September 30, 2016, Plaintiff reported that he recently attempted suicide but did not have suicidal ideation at this appointment, and Dr. Rojec noted that Mr. Robles was alert, cooperative, and in no respiratory or other distress. *See* [*id.* at 445-47]. Other physical exams revealed that Plaintiff was well-developed, alert, oriented, and had organized thought pattern, a normal gait, normal mood and affect, and no respiratory distress. *E.g.*, [*id.* at 456, 465, 482-83, 490, 494, 496, 498, 501].

<u>2017</u>

Plaintiff returned to BHG in February 2017. Plaintiff's February 2 Annual Physical Exam revealed that his skin, eyes, ears, nose, mouth, neck, heart, peripheral pulses, lungs, abdomen, joints, spine, extremities, cranial nerves, gait, balance, coordination, motor strength, and mental status were all normal. *See* [#18-12 at 697-708]. Plaintiff's February 11 Annual Physical Exam noted many of the same results, except Plaintiff's gait was noted as abnormal and he complained of pain and chronic pain. *See* [*id.* at 709-14].

Other treatment notes from 2017 reveal that Plaintiff had a stable mood but depressed affect. *See* [#18-11 at 622-23]. On March 16, 2017, Plaintiff presented to Dr. Janet Suarez for

evaluation of Plaintiff's respiratory issues, and a physical exam revealed normal mood, behavior, speech, and thought process, no distress, and normal speech. *See* [*id.* at 615-617]. On April 25, 2017, Plaintiff placed a triage telephone call, wherein he informed the psychiatrist that he was not suicidal and denied suicidal ideation but explained that life was hard. *See* [*id.* at 608-09]. Dr. Suarez reported that Plaintiff was alert, in no distress, and had appropriate mood, behavior, speech, and thought process as of May 19, 2017. *See* [*id.* at 601-06]. On May 25, 2017, Plaintiff spoke with a psychiatrist and explained that his struggles with securing public housing made him contemplate suicide, though he denied suicidal ideation at the time. *See* [*id.* at 600-01]. Treatment notes from July 12, 2017 reveal that Plaintiff was well-developed and had an organized thought pattern and normal mood and affect. *See* [*id.* at 590-91, 595-96]. A state agency psychologist also reviewed Mr. Robles's medical records and determined that Plaintiff suffered from severe depression; however, the state agency psychologist found insufficient evidence to determine the extent to which Mr. Robles's mental ailment impacted his functionality. *See* [#18-3 at 54-59].

### B. The ALJ's Decision

Concerning Plaintiff's depression, the ALJ explained, "[a]lthough he has occasionally reported depression and suicidal ideation, his mental status, as observed by various physicians has been stable with only some variability in his mood and affect." [#18-2 at 21-22]. The ALJ continued by noting that "[t]reatment records from various providers reveal that the claimant has a history of depression with occasional suicidal ideation"; that, despite his substance abuse disorder, "his mental status has repeatedly been intact, other than some fluctuations in his moods and affect"; that there "is evidence that he experienced a flare in suicidal thinking in August and September 2016," yet there was no "indication that it was sustained"; that "other than some variability in mood and affect, he did not have sustained deterioration in mental status"; and that

11

his "mental health treatment was generally routine and sporadic in nature[.]" [*Id.* at 22]. The ALJ concluded that "although [Plaintiff] had occasional flares in mental symptoms, his mental status findings have generally be [sic] stable showing no sustained attentional or memory deficits or inability to [sic] related to or communicate with his providers[,]" and thus Mr. Robles was no less limited than the RFC assessment. *See* [*id.* at 23].

Mr. Robles argues that the ALJ's conclusion that Mr. Robles's severe depression was stable and not sustained "are unsupported and overwhelmed by other evidence in the record." [#22 at 10]; *see also* [#23 at 8-9, 12-13]. For instance, Mr. Robles argues that the ALJ ignored evidence from 2017 that Mr. Robles informed a psychologist that he was "considering suicide" which led to a wellness check by the police, as well as other 2017 evidence identifying Mr. Robles's severe depression. *See* [#22 at 10-11]. Further, Mr. Robles argues that his medical records demonstrate that his depression has been a constant ailment, and is one for which he sought persistent treatment despite the ALJ's conclusion otherwise. *See* [*id.*; #23 at 8-9, 12-13].

The Commissioner counters that the ALJ rightfully concluded that Mr. Robles's mental impairments, including his severe depression, caused only minimal limitations on his functionality. *See* [#23 at 10]. The Commissioner argues that Plaintiff infrequently sought treatment for his depression and that mental status exams were "largely unremarkable." *See* [*id.*]. According to the Commissioner, Plaintiff's diagnosis of severe depression is not in and of itself enough to establish a disability, and that much of the evidence cited by Plaintiff "pre-dates the relevant time period." *See* [*id.* at 11-12]. I respectfully disagree.

To start, I note that the ALJ's decision sporadically cites to exhibits in the record or relies on global references to large medical records, without any citation to a specific page within the exhibit. *See* [#18-2 at 22]. The court is wary that such a practice satisfies the ALJ's burden that

12

substantial evidence support her decision. *See Romo v. Colvin*, 83 F. Supp. 3d 1116, 1120 n.4 (D. Colo. 2015) ("Relatedly, I note that throughout his opinion, the ALJ cites to the record by way of global references to multi-page exhibits, without pinpoint citations to specific pages therein. This court is neither required nor inclined to scour the record in an attempt to divine the specific basis for an ALJ's opinion, and I thus repeatedly have found that such general citations do not substantiate the ALJ's disability decision." (collecting cases)); *Brown v. Colvin*, 82 F. Supp. 3d 1274, 1279 n.5 (D. Colo. 2015) (cautioning, "[t]he Commissioner should now have fair notice of this court's position that, in general, such global references will not constitute substantial evidence in support the ALJ's decision and thus will warrant remand"). To be sure, the ALJ need not discuss <u>every</u> piece of evidence in the record, but she must still "discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). And while "[i]t may be possible to assemble support for [her] conclusion from parts of the record cited elsewhere in the ALJ's decision, . . . that is best left for the ALJ [her]self to do in the proceedings on remand." *Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011).

Next, the court disagrees with the Commissioner that Plaintiff relies on evidence pre-dating the relevant period and thus the ALJ did not error in assessing Plaintiff's severe depression. Defendant contends that only those records from August 31, 2016, the date of the SSI application, through the ALJ's decision are relevant. *See* [#23 at 3 n.2]; *cf.* [#26 at 8 n.1 (suggesting that all of Mr. Robles's medical records are relevant with at least those beginning on February 2, 2016, the alleged date of onset, being the most relevant to this SSI application)]. As mentioned, SSI is payable at the earliest the month following the month in which the claimant files his application, meaning the claimant must demonstrate a disability <u>on or before</u> the application date, and the

13

Commissioner will consider the entire medical record from at least the 12 months preceding an application. *See* 20 C.F.R. § 416.912(b)(1). Because of this, the court agrees that all of Mr. Robles's medical records are relevant to his SSI application, especially those within the 12 months preceding his application, and thus the ALJ could not disregard those medical records pre-dating the application without good reason. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ."); *accord Winters v. Colvin*, No. 1:15-CV-03073-RHW, 2016 WL 8232240, at *4 (E.D. Wash. May 6, 2016) (noting that the Commissioner's regulations do not render irrelevant medical evidence dated prior to a SSI application). Indeed, the ALJ's discussion considers medical records from 2015, *see* [#18-2 at 21-23], and the court similarly considers such records, *cf. Hackett v. Barnhart*, 475 F.3d 1166, 1174-75 (10th Cir. 2007) (explaining that courts typically do not credit the Commissioner's post-hoc rationales for upholding an ALJ's decision).

The court also agrees with Mr. Robles that the ALJ's RFC assessment fails to address swaths of probative evidence tending to support more restrictive mental limitations caused by Plaintiff's severe depression. Indeed, the court agrees that the medical record contains significant mention of Plaintiff's severe depression and its effects on his mental functionality, which the court discusses above. Further, the state agency psychologist concluded that Mr. Robles suffered from severe depression, though she also could not express an opinion as to the restrictions this posed to Plaintiff's mental functionality for lack of sufficient evidence. *See* [#18-3 at 54-59]. The ALJ rejected this opinion as "internally inconsistent as there must be objective evidence to support a finding of severity." [#18-2 at 20]. Though the court does not rule on the weight the ALJ should

accord this opinion, this is the only medical opinion in the record, and there is objective medical evidence that supports Mr. Robles's claimed greater mental limitations. In such instances, a consultative exam may be appropriate or necessary. *See Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997) (noting that the Commissioner retains "broad latitude in ordering consultative examinations," but that a consultative exam is often required or necessary "where there is a direct conflict in the medical evidence requiring resolution, . . . where the medical evidence in the record is inconclusive, . . . [or] where additional tests are required to explain a diagnosis already contained in the record" (internal citations omitted)).

In sum, while this court may not reweigh the medical evidence, *see Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000), and must defer to the ALJ's resolution of evidentiary conflicts, *see Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016), the ALJ's failure to identify any conflicting medical evidence (especially given the evidence recounted above) precludes the court from concluding that the "ALJ properly considered this impairment, singly and in combination with her other impairments, thereby necessitating remand of this matter to the ALJ[,]" *Berg v. Berryhill*, No. 16-CV-02718-NYW, 2018 WL 276280, at *9 (D. Colo. Jan. 3, 2018) (remanding to the ALJ because the ALJ failed to discuss the plaintiff's posttraumatic stress disorder when assessing the plaintiff's RFC). In so concluding, the court expresses no opinion as to the nature of mental limitations caused by Mr. Robles's severe depression. Rather, on this record, the court agrees that the ALJ's RFC assessment fails to adequately explain Mr. Robles's mental limitations associated with his severe depression given the ALJ's failure to explain the "uncontroverted evidence [s]he [chose] not to rely upon, as well as significantly probative evidence [s]he reject[ed]." *Clifton*, 79 F.3d at 1009-10.

## CONCLUSION

For the reasons stated herein, the court hereby **REVERSES** the Commissioner's final decision and **REMANDS** this matter to the ALJ for further consideration consistent with this Memorandum Opinion and Order.

DATED: June 6, 2019

BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge